1  ANTHONY J. SPERBER, Bar No. 197962
   LAW OFFICE OF ANTHONY J. SPERBER
2  1808 Sixth Street, Berkeley, CA 94710
   Tel: (510) 845-8844
3  Fax: (510) 845-1998
   anthony@sperberlaw.com
4
5  Attorneys for Plaintiff Atkins Sheep Ranch, Inc.

6

7

8                    **UNITED STATES DISTRICT COURT**

9                   **NORTHERN DISTRICT OF CALIFORNIA**

10                          **OAKLAND DIVISION**

11

| | |
|---|---|
| ATKINS SHEEP RANCH, INC., a California Corporation, | **CASE NO.  4:17-cv-4917** |
| Plaintiff, | **COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF; DEMAND FOR JURY TRIAL** |
| vs. | (1) Misappropriation of Trade Secrets, Defend Trade Secrets Act (18 U.S.C. § 1836) |
| CHARLES SCHARMANN, JOSEPH RING, CHRIS LAM, BLUE RIVER SEAFOOD, INC., a California Corporation dba PUCCI FOODS, and DOES 1 through 100, inclusive, | (2) Misappropriation of Trade Secrets, California Uniform Trade Secrets Act (Civil Code § 3426) |
| Defendants. | (3) Breach of Fiduciary Duty and Duty of Loyalty |
| | (4) Tortious Interference with Prospective Economic Advantage |
| | (5) Unfair and Unlawful Competition (Cal. Bus. Code § 17200) |
| | (6) Violation of California Penal Code § 502 |
| | (7) Conversion |

        Plaintiff Atkins Sheep Ranch, Inc. ("Atkins Ranch ," "Company" or "Plaintiff"), by and through

its undersigned attorneys, for this Complaint against Defendants Charles "Chuck" Scharmann, Joseph

Ring, Chris Lam, and Blue River Seafood, Inc. dba Pucci Foods ("Pucci") alleges as follows:

**PARTIES**

1.     At all relevant times, Plaintiff was a California Corporation conducting business in California, primarily in Alameda County, with its principle place of business in Fremont, California.

2.     At all relevant times mentioned, Defendants Charles Scharmann ("Scharmann"), Joseph Ring ("Ring"), and Chris Lam ("Lam") were individuals residing and working in California, principally in Alameda County. At all relevant times mentioned, Blue River Seafood Inc. was a California corporation conducting business in California, primarily in Alameda County, with its principle place of business in Hayward, California.

**JURISDICTION**

3.     This case involves a federal question, the interpretation and enforcement of the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836.  Therefore, pursuant to U.S.C. § 1331, this Court has original jurisdiction. This Court has supplemental jurisdiction over the other claims asserted herein, pursuant to 28 U.S.C. § 1367.

**VENUE**

4.     Venue is appropriate in this Court because a substantial part of the events at issue in this case occurred in this District, namely in Alameda County.  Additionally, the intellectual property at issue in this case, and most of the evidence likely to arise in this case are located in this District. Further, at least one defendant is located in this District and all other defendants are located in Northern California.

**INTRADISTRICT ASSIGNMENT**

5.     As this case arose in Alameda County, it should be assigned to the Oakland Division.

**GENERAL ALLEGATIONS**

<u>INTRODUCTION</u>

6.     This action is brought to remedy Scharmann and Ring's disloyal and unlawful conduct in: (a) misappropriating Plaintiff's property, including Plaintiff's confidential, proprietary, and trade secret information; and (b) giving that stolen intellectual property to Pucci so that it could set up a business to compete with Atkins Ranch. This action is also brought to remedy Lam's and Pucci's unlawful receipt and use of Plaintiff's confidential, proprietary, and trade secret information.

| COMPLAINT | - 2 - | CASE NO.  4:17-cv-4917 |

7.     Atkins Ranch is a company that produces high quality grass-fed lamb products for sale and consumption in the United States, including California.  Atkins Ranch also purchases meat products from other producers and processes, packages and provides them to retailers in ready-to-sell form, i.e., ground, sliced, seasoned, packaged, etc. Atkins Ranch sells to major retailers including Whole Foods Market and Grocery Outlet. Atkins Ranch has been in business since 1989 and has sold to Grocery Outlet since 2010. As of the filing of this Complaint, Grocery Outlet is one of Atkins Ranch's largest customers, representing approximately $10 million in annual revenue—20% of Atkins Ranch's total revenue.

8.     Scharmann was employed by Plaintiff as a Director of Operations from October 2003 through June 2017. His job was to increase and promote the Company's goodwill with existing and prospective customers and in the marketplace; and to service, solicit and sell to the customers and prospective customers assigned to him by Plaintiff.  Ring was employed by Plaintiff as Processing Manager from June 2003 to August 2017. His job was to manage processing operations, oversee processing supervisors, purchase raw supplies, ingredients and packaging and ensure that customer orders were fulfilled.  In these positions, Scharmann and Ring had access to Plaintiff's confidential information, including trade secrets and proprietary information.

9.     Unbeknownst to the Plaintiff, while Scharmann and Ring were employed by the Company, and supposedly doing their job, Scharmann and Ring secretly—and in violation of their legal obligations to Plaintiff—actively and deceptively misappropriated Plaintiff's confidential and proprietary documents, including trade secrets. Scharmann and Ring also developed a business plan designed to take one of Plaintiff's most important customers and divert that business to Pucci, an organization with no previous red meat processing experience, with the promise of high-level employment to Scharmann and Ring.

10.     Prior to their departure from Plaintiff's employment, Scharmann and Ring surreptitiously downloaded and took Plaintiff's trade secret materials—including detailed, confidential analytical material, data and records generated by Plaintiff concerning Plaintiff's business operations and business relationship with Grocery Outlet.  They also attempted to conceal the removal of this confidential material, and solicited one of Plaintiff's primary customers, Grocery Outlet, to become a

Pucci customer. Lam and Pucci participated in the misappropriation by receiving the stolen information, the form of the business plan and project tracker, and thereafter hiring Scharmann and Ring. Lam and Pucci perfected their conspiracy by soliciting Grocery Outlet, using the stolen information to demonstrate their ability to replace Atkins Ranch.

11.    Plaintiff brings this action for: (1) misappropriation under the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836; (2) misappropriation under California Civil Code § 3426, et seq.; (3) breach of fiduciary duty and duty of loyalty; (4) tortious interference with prospective economic relations; (5) unfair competition under California Business and Professions Code § 17200, et seq.; (6) violation of California Penal Code § 502; and (7) conversion. Plaintiff alleges civil conspiracy against all Defendants, making each legally responsible for the unlawful conduct of the others.

12.    As of the filing of this Complaint, Defendants have misappropriated and converted, and continue to unlawfully misappropriate and convert, Plaintiff's confidential and proprietary documents, including trade secrets. Plaintiff seeks remedies against Defendants, including injunctive relief, lost profits, punitive damages, forfeiture of illicit wages and other relief.

<u>COMPANY POLICIES</u>

13.    Pursuant to the Employee Handbook, Scharmann and Ring agreed to the following written Company policies, among others:

***Electronic and Social Media***

Information stored in Atkins Sheep Ranch computers and file servers, including without limitation vendor lists, research data, customer lists is the property of the Company and may not be distributed outside the Company in any form whatsoever without the written permission of the president. (Page 31)

***Prohibited Use***

All existing Company policies apply to employee use of computers, electronic communications, electronic information, and the Internet. This includes policies that deal with misuse of Company assets or resources. It is a violation of Atkins Sheep Ranch policy to use computers, electronic communications, electronic information, or the Internet, in a manner that: is discriminatory harassing or obscene; constitutes copyright or trademark infringement; violates software licensing rules; is illegal; or is against Atkins Sheep Ranch policy. It is also a violation of policy to use computers, electronic communications, electronic information, or the Internet to communicate confidential or sensitive information or trade secrets. (Page 32)

***Confidential Information***

*Each employee is responsible for safeguarding the confidential information obtained during employment.*

In the course of your work, you may have access to confidential information regarding Atkins Sheep Ranch, its suppliers, its customers, or perhaps even fellow employees. You have a responsibility to prevent revealing or divulging any such information unless it is necessary for you to do so in the performance of your duties. Access to confidential information should be on a "need-to-know" basis and must be authorized by your supervisor. Any breach of this policy will not be tolerated and legal action may be taken by the Company. (Page 35).

14.    As employees of Atkins Ranch, Scharmann and Ring were obligated, by law and contract, to devote their full and utmost loyalty and good faith to Plaintiff, and were prohibited from engaging in any actions or conduct in violation of these duties, or which competed with, or tended to harm Atkins Ranch and/or which would assist or further the interests of a competitor.

15.    When accepting employment by Atkins Ranch, Scharmann and Ring agreed to abide by the terms and rules set forth in the Company's Employee Handbook which expressly delimited their use of protected and confidential information owned by Atkins Ranch.

16.    Scharmann and Ring violated all of these policies. Specifically, they: (1) distributed information stored on Atkins Ranch computers and servers to parties or entities outside the Company without the written consent of the president as required under the "Electronic and Social Media" policy; (2) used Company computers, electronic communications, electronic information, and the Internet to communicate confidential or sensitive information or trade secrets, in violation of the "Prohibited Use" policy; and (3) failed to safeguard and prevent revealing or divulging confidential information regarding Atkins Ranch, its suppliers, its customers, or fellow employees to persons outside of the Company who are not authorized recipients as prescribed by the "Confidential Information" policy.

17.    Lam and Pucci received this information, knowing that it was highly confidential and stolen from Atkins Ranch.

<u>THE INFORMATION AT ISSUE CONSTITUTES TRADE SECRETS</u>

18.    The confidential business information taken from Atkins Ranch includes, but is not limited to: (a) sales and other financial information that is specific to the business that Atkins Ranch does with Grocery Outlet; (b) lists of the specific equipment used by Atkins Ranch to conduct its

business; (c) products that are specific to those that Atkins Ranch sells to Grocery Outlet, including Atkins Ranch product codes and descriptions, along with actual annual sales attributed to each product; (d) specific lists of supplies and ingredients that pertain to the products that Atkins Ranch produces for Grocery Outlet; (e) business plans sent from Scharmann's Company email address to his personal email address, which included financial projections and other confidential data.  In aggregate, this information comprises a roadmap needed by a competitor to assemble a business plan that could be used to quickly replicate the products and services that Atkins Ranch provides to Grocery Outlet.

19.    As employees of Atkins Ranch, Scharmann and Ring had access to substantial confidential information related to Atkins Ranch's business operations, including information about Atkins Ranch's customers, products, costs, margins, profit percentages and markets.   The confidential information, compiled and maintained by Atkins Ranch over many years, is used by Atkins Ranch to analyze and strategize ways to improve the performance of the Company and to enhance the services provided to customers.  This body of information is not available to Atkins Ranch's competitors or other third parties.  It constitutes Atkins Ranch's trade secrets.  It represents a substantial investment of money, time, and expertise.  It is of significant economic value to the Company (and now to Pucci).

20.    Atkins Ranch has taken significant steps to protect its confidential and proprietary information.   Atkins Ranch employees, such as Scharmann and Ring, are able to gain access to the information only by means of password protected entry points.  Atkins Ranch also maintains personnel policies requiring employees to maintain the confidentiality of the Company's confidential information, and the employee Defendants agreed to comply with these policies.

DEFENDANTS' THEFT AND USE OF PLAINTIFF'S CONFIDENTIAL INFORMATION

21.    Following Scharmann and Ring's departure from their employment, Atkins Ranch discovered they had been conspiring with each other, and with Defendants Lam and Pucci, to use Plaintiff's proprietary and confidential information to form a new business entity created for the express purpose of stealing Plaintiff's business from one of its most important customers, Grocery Outlet.  This conduct by Scharmann and Ring was absolutely improper and unlawful, and was an attempt by Scharmann and Ring to steal Plaintiff's information and to conceal their conduct in order to obtain an

1    unfair and unlawful competitive advantage over Atkins Ranch—as well as other meat processing

2    companies who could otherwise fairly compete for the Grocery Outlet business.

3         22.    In particular, Scharmann and Ring stole: sales reports, sales analyses, and other financial

4    information related to Atkins Ranch's Grocery Outlet business in 2014, 2015, 2016 and 2017; an

5    equipment list; and a consumables and packaging materials list.  Together, this information has

6    extraordinary value, particularly for the purpose of setting up a company to compete with Atkins Ranch

7    for the Grocery Outlet business. It is, essentially, a roadmap of how to quickly build a competing

8    business. And all of this information *was in fact already used* by Scharmann and Ring to prepare a

9    business plan to create a competing company.  Moreover, this information *is in fact being used right*

10   *now* by Defendants to create an entity to take the Grocery Outlet business away from Plaintiff.

11        23.    These actions of Scharmann and Ring were conducted while being paid by Plaintiff to

12   further its business. Much of the unlawful conduct occurred during the workday and at Plaintiff's place

13   of business. A handful of emails illustrate the unlawful scheme and Defendants' abuse of employer

14   resources for their own personal gain:

15        a.    On May 2, 2017, Ring sent an email to Scharmann with attachments of many documents

16   owned by Plaintiff, including capital expenditure request documents;

17        b.    On May 15, 2017, Scharmann forwarded from his Atkins Ranch email to his personal

18   email a document entitled, "My Name is Charles," which was essentially a biographical resume. Just

19   28 minutes later, Grocery Outlet manager Steve Keville sent an email to Pucci CEO Chris Lam,

20   introducing Scharmann and Mr. Lam. In the email, Keville states that Scharmann "would like to talk to

21   [Pucci] about some possible opportunities."

22        c.    On May 30, 2017, Ring sent an email to Scharmann containing an attachment of a project

23   tracker Excel worksheet template to be used in the nascent business plan;

24        d.    On May 31, 2017, using his Atkins Ranch email account, Scharmann forwarded the

25   project tracker worksheet to his personal email account.  The project tracker worksheet was then

26   populated with "new project" details showing a start date of June 1, 2017. In the field showing which

27   person is responsible for a certain task, the name "Joe" (Joe Ring) now appears.

28

e.      Also, on May 31, 2017, Scharmann forwarded Ring information about an auction of food processing equipment. It is equipment that Atkins Ranch already owns or does not need, indicating that this information was compiled for reasons other than the Defendants' normal duties, and not for the benefit of his employer.

f.      On June 1, 2017, Ring sent an email to Scharmann showing further details added to the project tracker. In the field showing which person is responsible for a certain task, the name "Joe" appears in more places, and the names "Chris" (Chris Lam) and "Chuck" (Chuck Scharmann) now appear as well.

g.      On June 2, 2017, Ring sends Scharmann an updated version of the project tracker. This one indicates more duties for Joe, Chris and Chuck.  In damning detail, it specifically lists tasks involving "GO" (Grocery Outlet) and Pucci.  And leaving no further doubt, it is entitled, "Atkins Transition Target August 1, 2017".

h.      On June 12, 2017, Scharmann sent an email to Ring attaching Atkin's detailed sales reports for its Grocery Outlet business in 2014, 2015 and 2016.  Scharmann asks Ring to make graphs from the reports, commenting, "It would make a nice story on a business plan."

i.      Also on June 12, 2017, Scharmann forwarded, in zipped attachments, a variety of confidential worksheets, documents and details about Atkins Ranch's business from his work email to his personal email. Among these many documents were invoices from meat suppliers, revealing the exact ingredients and materials that Atkins Ranch purchased, the quantities purchased, and the pricing it had negotiated. Atkins Ranch's credit application was included, as were documents listing Atkins Ranch's fuel costs. Also included were a variety of documents relating to Atkins Ranch's suppliers and Company sales.

j.      Also on June 12, 2017, from the Atkins Ranch email account, Scharmann emailed Keville saying that Lam wanted to meet Keville because Lam wanted to "make sure GO is serious about the change."  Keville responds that Chris wanted Keville to "sign an agreement to work with him for a time." Keville also prods Scharmann to come to Southern California for a store visit. In reply, Scharmann promises to visit the stores "a lot after the change."

k.      Later on June 12, 2017, Scharmann forwarded to his private email account an email he received on his Atkin's email account from Keville.  Keville sent a draft business plan that contemplated taking over Atkins Ranch's Grocery Outlet business. The subject line was, "Look this over Chuck .. last couple of things you will need to fill in."  Keville advised Scharmann: "Don't forget to delete this email!!"  The Executive Summary explains:

> The plan is to work with Pucci so they can provide a meat cutting facility that is able to partner with and become a portion of the supply and production arm of the Grocery Outlet, Inc. Fresh Meat Program. The plan would be for Pucci to provide a USDA Inspected facility with equipment and trained personnel that can cut, wrap, price and ship fresh cuts of Beef, Pork and Chicken to Grocery Outlet's warehouse facilities for distribution to their stores.

In other words, the plan is to create a business that does exactly what Atkins Ranch does for Grocery Outlet. The plan's other key points:

(1)      "Grocery Outlet would agree to transfer all of their current business from the facility currently producing these items once Pucci has established the proper space and equipment to enable a smooth transition."  (Atkins Ranch is "the facility currently producing these items.")

(2)      The business will be owned by Pucci and Chris Lam.

(3)      Estimated first year revenue is $10 million to $11 million, which aligns with current Grocery Outlet business with Atkins Ranch and is consistent with what Scharmann said in his resume was Atkins Ranch's 2016 income from Grocery Outlet.

l.      On June 16, 2017, Scharmann emailed from his Atkins Ranch account an attachment that contained detailed information about Atkins Ranch's sales to Grocery Outlet, including product codes, sales figures, product cost, and exact profit.

m.      One hour later, on June 16, 2017, Scharmann emailed from his Company account the revised business plan to Keville and Ring.  The revised business plan now included the following:

(1)      Scharmann and Ring will be managers of the new business, reporting only to the owner, Chris Lam.

/

/

/

(2)    Equipment List on page 2 of the Business Plan is an exact cut-and-paste of the Equipment Worksheet contained in the "Grocery Outlet" workbook email by Scharmann from his Atkins Ranch work email to his private email;

(3)    Financial Projections on page 3 shows sales volumes and value for 2014, 2015 and 2016, which have been extracted directly from Atkins Ranch's financial reporting system. Detailed financial performance by item for 'last 12 months' was included. This detail is an exact cut-and-paste of the worksheet Scharmann emailed from his Atkins Ranch work email to his private email on June 16, 2017;

(4)    Retail Item Information on page 5 shows the item list from the "Grocery Outlet" workbook email by Scharmann from his Atkins Ranch work email to his private email;

(5)    Consumables and Packaging Materials on page 6 & 7 are also from the "Grocery Outlet" workbook email by Scharmann from his Atkins Ranch work email to his private email.

24.    On June 28, 2017, Atkins Ranch terminated the employment of Scharmann. He was asked to return his Company cell phone, but without permission he took it with him as he left the building.

25.    On July 6, 2017, Atkins Ranch CEO Jonathan Packman caused a letter to be delivered to Scharmann, demanding that he cease and desist from any further misappropriation, and demanding the return of all equipment and stolen information.  He did not respond, so the Company sent a follow-up letter on July 17, 2017 (which was finally served after several efforts on July 24, 2017).

26.    Also on July 6, 2017, Keville told Mr. Packman during an in-person meeting that Grocery Outlet did not have any intention of moving its business away from Atkins Ranch.

27.    On or about July 8, 2017, Scharmann returned the Company cell phone, but had wiped clean the hard drive, erasing evidence of Defendants' wrongdoing.

28.    On July 25, 2017, through a letter from his attorney, Scharmann denied the allegations. In response, the Company's attorney requested a declaration under penalty of perjury.

29.    On July 28, 2017, Mr. Packman delivered a letter to Lam, informing him that he was in receipt of trade secret information stolen by Scharmann and Ring. Lam did not in any way respond to the letter.

30.     Also on July 28, 2017, a third party verified the employment of Scharmann on behalf of Pucci, strongly suggesting that Pucci was going to hire Scharmann, as indicated in the business plan.

31.     On August 7, 2017, Ring abruptly quit his job at Atkins Ranch via voice mail message on Atkins Ranch Ranch's general number, giving no reason for his departure.

32.     On August 14, 2017, Mr. Packman caused a letter to be delivered to Ring, demanding that he cease and desist from any further misappropriation, and demanding the return of all equipment and stolen information by 5:00 p.m. on Monday, August 21, 2017. Ring did not respond to the letter, text or voice mail messages.

33.     Through the Company's ongoing investigation, it has determined through an initial inspection of Scharmann's computer that he appears to have deleted several of the emails described above from his Atkins Ranch email inbox or outbox—and then deleted them from his trash folder—also known as "double-deleting" or "hard-deleting."  Double-deleting company emails is an often an indication of an intention to hide information or deceive someone who might discover those emails later.

34.     On August 22, 2017, Grocery Outlet manager Steve Keville told Mr. Packman that Grocery Outlet intended to move all of its business to Pucci, indicating the imminent conclusion of the unlawful plan hatched months previously by Scharmann, Ring, Lam, and Pucci. Mr. Packman asked Keville to reconsider, explaining the detrimental effect on Atkins and approximately 20 employees who Atkins expected would be laid off. Keville agreed to think about it, and promised to give Mr. Packman a final decision on August 23, 2017.

35.     On August 23, 2017, Keville announced to Mr. Packman that Grocery Outlet was indeed going to move all of its business from Atkins Ranch to Pucci Foods.

36.     Atkins management has conducted a damage assessment to estimate the fallout from losing the Grocery Outlet account. Atkins currently estimates that it will lose annual sales of $10 million to $11 million, which represents approximately $1,300,000 to $1,500,000 in profits. From this, the Company predicts that it will have to lay off roughly 20 employees.

37.     Defendants' actions reflect their blatant disregard for legal and contractual obligations and evinces intent to continue with these violations.

## FIRST CAUSE OF ACTION
### Misappropriation of Trade Secrets, Defend Trade Secrets Act (18 U.S.C. § 1836)
### (Against Defendants Scharmann, Ring, Lam and Pucci)

38.     Plaintiff owned and possessed certain confidential, proprietary and trade secret information, as alleged above.

39.     This confidential, proprietary, and trade secret information relates to products and services ordered, sold, shipped and consumed in interstate or foreign commerce.

40.     Plaintiff's trade secrets contained in the documents and data alleged herein derive independent economic value, both actual and potential, from not being generally known to other persons, businesses, or the public, who could obtain economic value from their disclosure or use.

41.     Plaintiff made reasonable efforts to keep secret the information contained in these confidential and proprietary documents by, among other things, limiting access to confidential information, requiring employees, including Defendants, to agree in writing to Company policies that required confidentiality, and using password protection for sensitive information.

42.     In violation of Plaintiff's rights, Scharmann and Ring misappropriated the trade secret data, documents and information described herein by emailing key documents to themselves and by exporting confidential documents and information to themselves, and by taking the actions alleged herein. Defendants Lam and Pucci received the highly confidential trade secret material, knowing it was stolen, and then used it to solicit the Grocery Outlet business. Lam and Pucci also rewarded the theft of the information by hiring Scharmann and Ring to manage the new business.

43.     Defendants' misappropriation of the confidential, proprietary, and trade secret information was intentional, malicious, and fraudulent.

44.     Defendants have failed to return Plaintiff's confidential and trade secret information and attempted to conceal their theft of such information. On information and belief, if Defendants' conduct is not remedied, and if Defendants are not enjoined, Defendants will continue to misappropriate, disclose, and use for their own benefit and to Plaintiff's detriment, Plaintiff's trade secret information.

45.     As the direct and proximate result of Defendants' conduct as aforesaid, Plaintiff has suffered and, if Defendants' conduct is not stopped, will continue to suffer, irreparable injury and significant damages, in an amount to be proven at trial.

46.     Because Plaintiff's remedy at law is inadequate, Plaintiff seeks, in addition to damages, temporary, preliminary, and permanent injunctive relief to recover and protect its confidential, proprietary, and trade secret information and its legitimate business interests.

**SECOND CAUSE OF ACTION**
**Misappropriation of Trade Secrets, California Uniform Trade Secrets Act (Civil Code § 3426)**
**(Against Defendants Scharmann, Ring, Lam and Pucci)**

47.     Plaintiff repeats, re-alleges, and incorporates by reference the prior allegations of this Complaint as if fully set forth herein.

48.     As the direct and proximate result of Defendants' misappropriation as aforesaid, Plaintiff has suffered and, if Plaintiff's conduct is not enjoined, will continue to suffer irreparable injury, as well as damages in an amount to be determined at trial.

49.     Because Plaintiff's remedy at law is inadequate, Plaintiff seeks, in addition to its damages, temporary, preliminary and permanent injunctive relief to recover and protect its secrets and its legitimate business interests.

50.     Defendants' acts were malicious, fraudulent, and oppressive, and were done with conscious disregard of Plaintiff's rights, all within the meaning of California Civil Code Section 3294, in that Defendants misappropriated Plaintiff's trade secret information intentionally and knowingly and with a deliberate intent to benefit themselves and injure Plaintiff. Plaintiff is entitled to its damages, in an amount to be determined at trial, as well as injunctive relief, and an award of punitive damages and/or treble damages and attorney's fees pursuant to California Civil Code Sections 3426.3(c) and 3426.4.

**THIRD CAUSE OF ACTION**
**Breach of Fiduciary Duty and Duty of Loyalty**
**(Against Defendants Scharmann and Ring)**

51.     Plaintiff repeats, re-alleges, and incorporates by reference the prior allegations of this Complaint as if fully set forth herein.

52.     As an employee of Plaintiff, Scharmann and Ring owed Plaintiff their undivided loyalty and were obligated to act with the utmost good faith, and in the best interests of Plaintiff.

53.     Plaintiff was entitled to place its trust and confidence in Scharmann and Ring and to expect them to act with the utmost good faith toward it in carrying out the business of Plaintiff.

54.    Plaintiff relied on Scharmann and Ring's loyalty and integrity and their faithful performance of their duties and responsibilities.

55.    Scharmann and Ring took advantage of Plaintiff's faith in them by: (a) not performing their duties to Plaintiff; (b) by acting in conflict of interest; (c) engaging in business for their own account; (d) engaging in business on behalf of Plaintiff's competitor, Pucci; (e) competing with Plaintiff; and (e) deceiving Plaintiff and concealing their improper conduct.

56.    Scharmann and Ring knowingly and willingly breached their duty of loyalty to Plaintiff by scheming to deceive and defraud Plaintiff, misappropriating and stealing Atkins Ranch's confidential and trade secret information, attempting to divert customers to Pucci, soliciting Plaintiff's customers on their own behalf and on behalf of Pucci while employed by Atkins Ranch, and misappropriating Plaintiff's trade secrets, confidential and proprietary business information, and customers.

57.    Scharmann and Ring acted in a manner inconsistent with their agency and trust by soliciting Plaintiff's customers on their own behalf, and on behalf of Plaintiff's competitors, and by diverting and misappropriating Plaintiff's sales, profits and property.

58.    As a direct and proximate result of Scharmann and Ring's disloyalty to Plaintiff and breach of their duties, Plaintiff has been and is being harmed. Plaintiff is entitled to its damages, in an amount to be determined at trial, as well as disgorgement from Scharmann and Ring of all monies and compensation paid to them during their period of disloyalty.

59.    Scharmann and Ring are, on information and belief, still in possession of Atkins Ranch's confidential and trade secret information and, on information and belief, are able to access and use this information on behalf of Plaintiff's competitor, Pucci. Further, on information and belief, Scharmann and Ring shared this confidential information with others who may use, or are using the information to Plaintiff's detriment.

60.    As a direct and proximate result of Scharmann and Ring's disloyalty, Plaintiff has been irreparably injured, and has suffered damages in an amount to be determined at trial. Because its remedy at law is inadequate, Plaintiff seeks, in addition to its damages, preliminary and permanent injunctive relief, enjoining Scharmann and Ring, and all those acting in concert or participation with them, from

further improper conduct, and from dealing with the customers whose confidential information they misappropriated.

61.    Scharmann and Ring's acts were malicious, fraudulent, and oppressive, and were done with conscious disregard of Plaintiff's rights, all within the meaning of California Civil Code Section 3294, in that Defendants misappropriated Plaintiff's trade secret information intentionally and knowingly and with a deliberate intent to benefit himself and injure Plaintiff's business. Plaintiff is entitled to its damages, in an amount to be determined at trial, as well as injunctive relief, and an award of punitive damages and/or treble damages and attorney's fees pursuant to California Civil Code Sections 3426.3(c) and 3426.4.

**FOURTH CAUSE OF ACTION**
**Tortious Interference with Prospective Economic Advantage**
**(Against Defendants Scharmann, Ring, Lam and Pucci)**

62.    Plaintiff re-alleges, and incorporates by reference the prior allegations of this Complaint as if fully set forth herein.

63.    Plaintiff had a reasonable business expectancy and ongoing relationships with its customers. Plaintiff had reasonable expectation of engaging in business with, and in earning profits in connection with sales to: (a) its existing customers with whom Defendants dealt; (b) new customers with whom Defendants dealt while employed by Plaintiff; and (c) customers who were involved in negotiations and discussions with Plaintiff and/or with Defendants while they were employed by Plaintiff. Defendants knew of these business relationships and expectancies.

64.    Defendants intentionally, and in violation of their duties, interfered with Plaintiff's business relationships and expectancies by diverting existing and prospective accounts. Defendants engaged in this diversion through fraudulent and deceitful conduct, such as that alleged herein, and other conduct that may be discovered.

65.    As a direct and proximate result of Defendants' improper conduct, Plaintiff has suffered damages including lost profits, the exact amount to be determined at trial.

66.    In addition, Defendants' wrongful acts also were willful, oppressive, malicious and/or fraudulent, thereby justifying an award of punitive damages.

**FIFTH CAUSE OF ACTION**
**Unfair and Unlawful Competition (Cal. Bus. Code § 17200)**
**(Against Defendants Scharmann, Ring, Lam and Pucci)**

67.     Plaintiff repeats, re-alleges, and incorporates by reference the prior allegations of this Complaint as if fully set forth herein.

68.     Defendants, on information and belief, knowingly performed acts to pirate away the fruits of Plaintiff's customer base, including, but not limited to: interfering with the prospective economic advantage Plaintiff has with its customers, diverting customers through use of trade secrets misappropriated from Plaintiff, and by engaging in the other acts alleged herein. These acts constitute unlawful, unfair, and/or fraudulent business practices and unfair competition prohibited under California Business and Professions Code Section 17200, et seq.

69.     As a result of such acts, Plaintiff has suffered, and will continue to suffer, irreparable harm by Defendants' unfair practices and unfair competition, including but not limited to harm to its business reputation, goodwill, and stature in the business community and with its customers, for which there is no adequate remedy at law, thereby justifying injunctive relief.

70.     Until and unless injunctive relief is granted, Plaintiff will be harmed and Defendants will be unjustly enriched. All unjust enrichment to date should be disgorged pursuant to allowable remedies under California Business and Professions Code Sections 17200, et seq.

**SIXTH CAUSE OF ACTION**
**Violation of California Penal Code § 502**
**(Against Defendants Scharmann and Ring)**

71.     Plaintiff repeats, re-alleges, and incorporates by reference the prior allegations of this Complaint as if fully set forth herein.

72.     Scharmann and Ring's conduct, as alleged herein, further violated California Penal Code section 502 in that they knowingly and without permission copied and/or made use of data and/or documents stored on Atkins Ranch's computer, computer system, or computer network.

73.     Scharmann and Ring's conduct, as alleged herein, further violated California Penal Code section 502, in that they knowingly and without permission accessed or caused to be accessed Atkins Ranch's computer, computer system, or computer network.

74.     Scharmann and Ring's actions, as alleged herein, were outside the scope of any prior authority they had to use Atkins Ranch's computer, computer system, computer network and data, including its proprietary and confidential information.

75.     As a direct and proximate result of Scharmann and Ring's conduct, Atkins Ranch suffered and continues to suffer damages including, but not limited to, the costs of conducting an investigation into Defendants' conduct, the costs of conducting a damage assessment, the costs and reputational harm associated with notifying customers of Defendants' conduct, and the cost of taking corrective action based on Defendants' conduct, such amounts to be determined at trial.

### SEVENTH CAUSE OF ACTION
#### Conversion
**(Against Defendants Scharmann, Ring, Lam and Pucci)**

76.     Plaintiff repeats, re-alleges, and incorporates by reference the prior allegations of this Complaint as if fully set forth herein.

77.     Atkins Ranch is the owner of the pricing, sales, costs and profit, customer information, and all documents contained within the files attached to the emails sent by Scharmann and Ring, and included in the business plan documents created by them and provided to Lam and Keville.  As the owner, Atkins Ranch is entitled to immediate possession of all copies of such information in the possession of Defendants.

78.     Scharmann and Ring wrongfully retained and used this information during their employment and following the termination of their employment, and conveyed this information to Lam and Keville, neither of which had a legitimate possessory or other interest in this information.

79.     As a result of Defendants' conduct alleged herein, Atkins Ranch has suffered harm, and will continue to suffer harm.

### ALLEGATIONS OF CIVIL CONSPIRACY
**(Against Defendants Scharmann, Ring, Lam and Pucci)**

80.     Plaintiff repeats, re-alleges, and incorporates by reference the prior allegations of this Complaint as if fully set forth herein.

| COMPLAINT | - 17 - | CASE NO.  4:17-cv-4917 |
|---|---|---|

81.     In May and June 2017, Scharmann, Ring, Lam and Pucci knowingly and willfully conspired and agreed among themselves to steal proprietary information and trade secrets from Atkins Ranch.

82.     As alleged herein, Scharmann, Ring, Lam and Pucci did, in fact, steal proprietary information and trade secrets from Atkins Ranch.

83.     Lam and Pucci furthered the conspiracy by receiving the stolen information and by lending aid and encouragement to Scharmann and Ring by participating in the plan to use that information to take away Atkins Ranch's business relationship with Grocery Outlet.

84.     As a proximate result of this conspiracy, Plaintiff suffered injury and damages as herein alleged.

85.     Accordingly, the actions of each Defendant is attributed to each and every other Defendant in the conspiracy, and each is fully and individually liable for all of the wrongful conduct and resulting damages caused.

## REQUEST FOR RELIEF

Plaintiff requests relief and judgment in its favor and against Defendants as follows:

A.     <u>INJUNCTIVE RELIEF</u>

1.     Restraining and enjoining Scharmann and Ring from directly or indirectly violating the terms of their confidentiality agreements with Atkins Ranch; and

2.     Restraining and enjoining Scharmann, Ring, Lam and Pucci from directly or indirectly accessing, disclosing, making available to any person or entity, or using any Atkins Ranch's confidential and/or trade secret information that Scharmann and Ring obtained while employed by Atkins Ranch; and

3.     Restraining and enjoining Scharmann, Ring, Lam and Pucci from directly or indirectly soliciting, or accepting business from, Grocery Outlet, Inc. of the same kind currently provided by Atkins Ranch; and

4.     Restraining and enjoining Scharmann and Ring from accepting or continuing employment with Lam or Pucci in any capacity in which they would work with Grocery Outlet on the same business as is currently provided by Atkins Ranch.

1

B.    MONETARY RELIEF

2          1.    Lost profits according to proof, currently estimated at $1,300,000 per year for a

3    period of five years, commencing on September 1, 2017, for a total of $6,500,000;

4          2.    Disgorgement of all salaries and other compensation Plaintiff paid to Scharmann

5    and Ring during the time of their disloyalty and unlawful actions described above;

6          3.    Disgorgement of all profits and unjust enrichment received by Defendants as a

7    result of the misappropriation, pursuant to California Business & Professions Code section 17200, et

8    seq. and California Civil Code section 3426.3(a);

9          4.    Royalties pursuant to California Civil Code section 3426.3(b);

10         5.    Punitive damages in the amount of $15,000,000;

11         6.    Pre-judgment and post-judgment interest

12         7.    Attorneys' fees, costs and other expenses incurred in this action.

13    DATED: August 23, 2017                LAW OFFICE OF ANTHONY J. SPERBER

14

15

16    By: _____

          Anthony J. Sperber
17        Attorneys for Plaintiff Atkins Sheep Ranch, Inc.

18

19

20

21

22

23

24

25

26

27

28